CLARK (BOWEN v.).  See Case No. 1,721.

## Case No. 2,816.
### CLARK v. BURNHAM.
[2 Story, 1.] [1]

Circuit Court, D. Maine.  May Term, 1837.

STATUTE OF FRAUDS — MEMORANDUM — SUBSTITUTION OF PAROL AGREEMENT—RESULTING TRUST.

1. Where an agreement was made for the purchase of lands, and the following paper was given.—"Ellsworth, Dec. 15, 1834. Received of Daniel Burnham and Cyrus S. Clark, one thousand dollars, to be accounted for if they shall furnish me satisfactory security for certain lands on the Naraguagus river, say one hundred and nineteen thousand acres, for one hundred and thirteen thousand dollars, on or before Friday morning next; otherwise to be forfeited. John Black,"—it was held to be a sufficient memorandum of the terms of sale, under the statute of frauds.

[Cited in Williams v. Morris, 95 U. S. 456.]

2. By a parol agreement having been subsequently substituted therefor, by which the said land was transferred, by deed, to other persons than those therein mentioned, and a bill being brought by Clark to recover a certain part from the grantees, as a resulting trust to him, it was held, that the written memorandum only created a presumption of a resulting trust, which could be rebutted by proof; and proof being given, that Clark did not advance any portion of the purchase money, as stated in the memorandum, it was held, that he was not entitled to a resulting trust, and that the contract was within the statute of frauds.

[Cited in Smith v. Burnham, Case No. 13,019.]

Bill in equity. The bill, in substance, states, that about December 15th, 1834, Clark and Burnham entered into an informal con-

---

[1] [Reported by William W. Story, Esq.]

tract with John Black, agent of the devisees named in William Bingham's will, for the purchase of sundry large tracts of land, in different parts of Maine, (particularly described in the bill) for which there was to be paid $113,000 as nearly as recollected; of which agreement, a memorandum was then made, and signed by said Black, and, by consent of Clark, delivered to Burnham; and which Burnham is called on to produce in court—by which agreement, Black was to give bond to Clark and Burnham, conditioned to give them a deed or deeds of said lands, on payment of the sum above named; that Clark and Burnham then paid Black $1,000, in equal portions, in part of consideration, the same being to be forfeited, if the contract should not be completed; that, afterwards, about the 19th of said December, it was agreed between Clark and Burnham, that David Webster should be interested in the purchase one half, Burnham three eighths, and Clark one eighth, in common; but that it was farther arranged and agreed, that the bond or bonds to be given by Black should be conditioned to convey the lands to Burnham and Webster only; and that they should be the obligees; and that, in this manner, Clark's one eighth should be secured to Burnham in trust for Clark. That bonds or contracts were accordingly so given by Black to Burnham and Webster, for conveyance of the said lands, on payment, as before mentioned, of the sum of $113,000, by five instalments; the first of which was payable in 60 days from December 15th, 1834; the second on December 15th, 1835; the third on December 15th, 1836; the fourth on December 15th, 1837, and the fifth on December 15th, 1838. That in consequence of the above agreement and arrangement with Clark, and of his giving up all his interest in the contract, except the one eighth, and the sum of $500, advanced to Black, Burnham engaged, on request, to assign and transfer to Clark one eighth part of his interest in the said contract and lands, and return to Clark the balance of the $500, after deducting one eighth of the said $1,000 paid as aforesaid. That on December 22nd, Clark demanded of Burnham such transfer and assignment, it being before any payment became due; but that he fraudulently refused to do it. That Clark was ready to pay his proportion of the said instalment on receiving such assignment, and of the other instalments, as they should become due.

The answer was, in substance, as follows: The defendant first denies, that there was ever any contract in writing between the parties, in relation to the subject-matter of the bill, and pleads the statute of frauds in bar, And in support of his said plea, he answers, that some time in the first part of December, 1834, he had some conversation in Portland with one David Webster, touching the purchase of certain lands, which had been previously advertised by Black, and he then

and there agreed with Webster to purchase the same in company with him; and then and there farther agreed to go immediately to Ellsworth, and secure the said purchase for himself and Webster, he, (Webster), being obliged to make a previous journey to the forks of the Kennebec, and agreeing to meet the defendant on Thursday, December 18th, and then proceed to Ellsworth, and close the purchase, if the defendant should succeed in securing the same. That the defendant, accordingly, left Portland on December 12th, and arrived in Bangor on the next day, where he found Clark, with whom he had no previous acquaintance, but whom he knew, by reputation, as a merchant, who had failed in Portland. That he had a conversation with Clark about the purchase of a tract of land, situated on Hog bay, in Hancock county, which the defendant thought could be purchased for three thousand dollars. That Clark proposed to become interested in the said purchase, and that they agreed to examine the said tract, and if it looked well, to purchase together. But that the defendant did not then inform Clark of his previous agreement with Webster, not deeming it prudent to inform any one of it, until the purchase should be secured, and intending to avail himself of the Hog bay purchase afterwards. That Clark and the defendant then went to Ellsworth in company, and on his arrival, this defendant called on Black, and told him of his and Webster's desire to purchase. It being Sunday, little was said, and the defendant agreed to call on the next day; and, on his return to the public house, informed Clark of the same; considering himself now safe, by having so notified Black. That some conversation then took place between Clark and the defendant about the quality of the lands, and of the defendant's and Webster's chance in making the said purchase; but nothing was then said about Clark's becoming interested; neither did this defendant then think of it, as he had never had it in contemplation to be interested with any one except Webster, and he also knew Clark's inability to engage in so large a speculation. That on the next day, the defendant called again on Black, and Clark went with him by invitation. That the defendant then stated to Black his agreement with Webster, and requested the refusal of the lands until Webster's arrival. Black, at first, peremptorily refused; stating, that Webster well knew that such was not his mode of doing business; that he did not know Burnham; and that, although he knew and had confidence in Webster, yet if he wished to make the purchase, he should have come in person, and closed the bargain at once. That the defendant and Black then had much conversation in Clark's presence; that the defendant urged Black to give the refusal, and stated the reason why Webster was not present; and that he did not wish the refusal for the purpose of speculating

upon it, but for the purpose of purchase; and that he offered to deposit with Black one or two thousand dollars, to be forfeited if the lands were not taken by the time specified. That while this was going on, Clark occasionally made remarks, and put questions about the lands, and also made remarks going to induce Black to give the refusal; his object being, as this defendant supposed, to aid the defendant in obtaining the refusal. That Black finally consented to take one thousand dollars, as proposed, and to give the defendant the refusal, until the morning of the next Friday; that the defendant then paid to Black one thousand dollars of his own money, and that Black then gave him a written paper, of which the following is a copy, as near as the defendant can recollect: "Ellsworth, Dec. 15, 1834. Received of Daniel Burnham and Cyrus S. Clark, one thousand dollars, to be accounted for, if they shall furnish me satisfactory security for certain lands on the Naraguagus river, say one hundred and nineteen thousand acres for one hundred and thirteen thousand dollars, on or before Friday morning next; otherwise to be forfeited. John Black." That, on taking this paper, the defendant noticed the insertion of Clark's name, but did not think it worth his while to object to it, as the money was paid by the defendant, and the paper was in his own possession; and as he was accordingly anxious to secure the refusal, and did not consider the shape or form of the writing to be material. That after receiving the said writing, the defendant inquired of Black, if he would take some other responsible man in the place of Webster, in case he did not arrive by the time appointed; that the defendant made such inquiry, in order that he might be prepared, in case of any unforeseen occurrence, which might prevent the said arrival; that the defendant named R. M. N. Smyth, of Bangor, and that Black expressed his willingness to take him, and also some others named by defendant. That, after some other conversation, Clark and the defendant returned to their lodgings; that Clark then inquired whether he could not be interested in the purchase, and said he thought he could procure some responsible individuals to become interested with him, whose security would be satisfactory to Black; that the defendant expressed his willingness to let Clark take an interest, if Webster did not arrive; but if he did, no third partner could be admitted; but that the defendant should be glad to admit him if Webster did not arrive; and he, Clark, could procure such security, as would be satisfactory to Black; as the defendant had no idea of forfeiting his thousand dollars. That Clark then proposed to pay the defendant five hundred dollars, and to be considered interested in one half if Webster did not arrive; that the defendant at first refused, as he doubted Clark's ability, and had no doubt

that Webster would arrive. But that Clark became urgent, in order that he might be considered as having the first claim in case of Webster's non-arrival, and that the defendant finally consented to take it, on this express condition, that if Webster did arrive, the money was to be returned, and Clark to be considered as no farther interested; and that Clark accordingly paid the defendant two hundred dollars, and gave him his note on demand for three hundred dollars more, which Clark agreed to pay, as soon as they should arrive in Bangor. In consequence of all which, and of the necessity of immediate action, the Hog bay speculation was deferred. That Clark and the defendant then returned to Bangor; and that Clark, then and there, as he informed defendant, tried to find some responsible individual to become interested, and make the cash payment, in case Webster did not arrive; and that Clark, also, as he told the defendant, tried to procure three hundred dollars, to pay his aforesaid note; but, as he informed defendant, he entirely failed in both attempts, and did not pay, or offer to pay the note. That the defendant also tried to find some responsible individual to take Webster's place, in case of his failure to arrive; but that the defendant was also unsuccessful; the magnitude of the undertaking, and its uncertainty, deterring all to whom defendant applied. That on Thursday, Webster did arrive, and expressed his readiness to complete the purchase; and that Clark then expressed his desire to be interested in some way, and said, that he was unable to purchase any part himself, or to procure any one to do so for him; but that he desired to have the right of pre-emption in one eighth, and wished the defendant to use his influence with Webster to procure it for him; that the defendant declined making any agreement with Clark about it, and told him that as Webster had arrived, he, Clark, had no claim on the purchase; and then offered to repay Clark his money and note, which Clark then declined receiving, stating, that he hoped to make some arrangement by which to become interested; that he admitted, that he had no claim to any part; and that the defendant then distinctly told Clark, that he had no wish to have any third person interested with them, and did not think, that Webster had; but that he finally agreed to sound Webster on the subject. That the defendant and Webster then went to Ellsworth, and on the way, the defendant hinted to Webster that there were others desirous of becoming interested with them, (one R. M. N. Smyth having also, after the arrival of Webster, expressed his desire to take a share,) but that Webster expressed himself so much averse to it, that the defendant dropped the subject, and did not, previous to the completion of the said purchase, mention Clark's name as in any way connected with it. That on arriving at Ellsworth on Fri-

day, the defendant and Webster notified Black, and received a conveyance of the lands, and some others, for which they gave their joint and several notes for one hundred and thirteen thousand dollars, divided into five equal payments; that the said notes were dated December 15, 1834, the first being payable in sixty days, and the residue in one, two, three and four years from date; that the one thousand dollars advanced by the defendant was indorsed on one of the notes, and that the defendant gave up the receipt aforesaid to Black, retaining no copy. That after completing the said purchase, the defendant and Webster returned to Bangor, where the defendant again saw Clark, who then, to this defendant's astonishment, claimed to be interested in said purchase, by virtue of the insertion of his name in the paper afore described, and of having paid two hundred dollars and given his note for three hundred dollars. But that Clark did not then, or any other time, offer to pay or secure any part of the purchase-money of the said lands, or pretend, that he could or would furnish the said security; that the defendant then told Clark, that neither he nor Webster was willing to admit any other partner, especially one whose notes would not be acceptable to Black, or of any value in the market; neither could they give a bond of the lands, as they had given their own notes to a large amount, one fifth part of which must be paid in sixty days, and they relied on making a sale in order to meet said payment; that the defendant then recapitulated to said Clark all the circumstances of his connection with the transaction, declined admitting him to a share in the purchase, and offered him his note and money, which the said Clark then and there received, and this defendant then supposed the whole matter ended, so far as Clark was concerned. That shortly afterwards, and before the defendant left Bangor, Clark sued this defendant, and claimed to recover five hundred dollars for so much money had and received; that the defendant employed counsel to defend, but that the said suit was never entered; and why the said suit was commenced, the defendant could not conceive, except it might be for the purposes of intimidation. That the defendant and Webster left Bangor on Tuesday, December 23rd, and in the course of the same winter, before the expiration of the sixty days, contracted to sell all their interest in eleven sixteenths of the said purchase; that before the said sale was completed, the said first payment became due, and was made accordingly, deducting the aforesaid one thousand dollars advanced by the defendant to Black. That the defendant and Webster were enabled to make the said first payment, by reason of the said contract to sell eleven sixteenths; that accordingly, on the 19th of February, they completed the said sale; but that before it was completed, on the same day, the

defendant was served with a subpoena to appear before Judge Ware, to answer to the said Clark, in a bill in equity, on Thursday, March 5th, 1835, at which time he appeared, and not being prepared with any evidence, an injunction was granted, restraining the defendant and Webster from selling the remaining five sixteenths. That this defendant has since understood, and believes, that the said Clark's object, in filing the said bill, was to embarrass the said sale, and force the defendant to a compromise of his inequitable claim, knowing the necessity, under which the defendant and Webster were, of making a sale, in order to make the first payment; that the defendant has understood and believes, that Clark has repeatedly so declared, —and that the said Clark has, in fact, much vexed and harassed the said Webster and the defendant, and prevented their making a sale up to the present time. That the defendant denies that any agreement, of the purport set forth in the bill, was ever made between the said Clark and the defendant, that Webster should become owner of one half, and the defendant of three eighths, and Clark of one eighth; or that the contract should be in the names of Webster and the defendant alone, and thus one eighth should be secured to the defendant, in trust for Clark; or that it was ever agreed by the defendant, on any consideration, to hold one eighth in trust for Clark; or, at his request, to assign one eighth to him; or that any part of the said five hundred dollars should be deducted, as part pay for the said one eighth; or that there was ever any understanding, express or implied, as to the points above specified between the said Burnham and Clark. The defendant further denies, that the said Clark ever demanded any transfer or assignment of the said eighth; or expressed his readiness to make his proportion of any payments, other than is hereinbefore stated; neither does the defendant believe, that the said Clark has ever, at any time, been ready or able to make said payments, or to give security therefor.

P. Mellen, for plaintiff.

W. P. Fessenden and Fessenden, for defendant.

STORY, Circuit Justice, delivered the opinion of the court, in substance, as follows: The present bill is not founded upon the original paper or receipt of John Black, given to the plaintiff and the defendant, dated on the 18th of December, 1834, and referred to in the bill and answer. Under that contract, if Clark (the plaintiff) is entitled to any part of the purchase from Black, he is entitled to a moiety, his name being used in that contract as one of the purchasers, and there being no other evidence to explain the interest of the purchaser. It has been said, that the receipt so signed by Black, is nothing but a naked

receipt, and not a memorandum of any contract for the purchase of the lands. I think otherwise; and that however imperfect in its expressions, it purports to contain a memorandum of the terms of the purchase by Burnham and Clark, viz. the purchase of the lands (119,000 acres) on the Naraguagus river, for the sum of $113,000, to be received on or before the next Friday. The terms of the instrument are as follows: "Ellsworth, Dec. 15, 1834. Received of Daniel Burnham and Cyrus S. Clark one thousand dollars, to be accounted for, if they shall furnish me satisfactory security for certain lands on the Naraguagus river, say one hundred and nineteen thousand acres for one hundred and thirteen thousand dollars, on or before Friday morning next; otherwise to be forfeited. John Black." The money, according to the terms of the memorandum, was plainly to be paid and secured by Burnham and Clark, and the lands were to be conveyed or secured jointly to them upon their complying with the conditions of the contract. But there is the less need to dwell on this point, because it does not constitute the groundwork of the present bill.

The case made by the bill, and for which the plaintiff now seeks relief, is founded upon a subsequent substituted contract, by which the same lands were to be purchased on the joint account of David Webster and Burnham and Clark, in which Webster was to have one moiety, and Burnham three-eighth parts, and Clark one eighth part; and that Clark's share was to be conveyed to Burnham in trust for Clark. The bill seeks from Burnham a conveyance of this one eighth part as a trust for Clark, upon the latter's paying and securing his proportion of the purchase-money. The answer denies, that there ever was any such substituted contract as the bill asserts; and insists on the benefit of the statute of frauds. It is clear that the substituted contract was not in writing. It is, therefore, a mere parol contract for the purchase of lands, and open to the objection of being within the statute of frauds, unless it constitutes a case of a resulting trust. But is the substituted contract itself sufficiently proved as an absolute, unconditional parol contract, as asserted in the bill? The answer positively denies it. The proofs are not clear to establish it. The most that can be said, is, that there is proof of some loose talk and indeterminate conversations between Burnham and Clark on the subject. It does not appear to me, that the court can, under such circumstances, say, that the contract itself is sufficiently proved. But if the substituted contract were sufficiently proved, as a parol contract, it would be within the statute of frauds, unless, at the time when it was entered into, Clark was entitled to a resulting trust in the lands, in virtue of the original contract of Burnham and himself with Black. Now, that de-

pends upon this,—whether any part of the purchase-money of $1,000, paid to Black, belonged to Clark. If it did, then the argument is, that a resulting trust arises, by operation of law, in favor of Clark to the extent of the share of the purchase-money paid by him. The argument in its general bearing in cases of joint purchases, is sound; for where lands are purchased with the several funds of two persons, there arises a resulting trust in the land to each, according to his share of the purchase-money, in whosesoever name the conveyance may have been taken. See 2 Story, Eq. Jur. § 1206, and the cases there cited.

The defendant insists, that he paid one half of the sum of $1,000, which was delivered to Black for the purpose of securing the bargain. Now, the answer denies that any part of the money paid to Black was Clark's, or paid on Clark's account. It admits, however, a conditional agreement afterwards, to let Clark into an interest in the purchase, if Webster would consent; and that upon this agreement, $200 was paid in money to Burnham, by Clark, and a note given by him for the remaining $300. Afterwards the purchase was made exclusively by Burnham and Webster with Black, and they, and they alone, gave their notes and security for the whole purchase-money, in which Clark did not join; nor had any part in the final negotiation. The $200 were afterwards repaid by Burnham to Clark, and the note of $300 was also given up to him. Now, there is no sufficient proof, that the $500 was, at the time, paid by, or on account of, Clark: and, taking the whole evidence, it seems to me, that the final bargain for an interest in the land, by Clark, with Burnham, was a subsequent transaction; and no fixed agreement existed between them at the time, when the money was paid to Black, and the money then paid, was not in any part the money of Clark, but wholly of Burnham. It is true, that the memorandum purports, that the money was paid jointly by Burnham and Clark; and without that, the plaintiff would scarcely have any ground to stand upon. But this receipt creates only a presumption of a resulting trust for Clark; and a resulting trust may always be rebutted by counter parol evidence. Now, in the present case, the answer, which is responsive to the bill, expressly denies, that the money was paid to Black by, or on account of, Clark; and asserts, that it was all Burnham's own money, and paid upon his own sole account. At all events, the transaction is so obscure and doubtful in its circumstances, that a court of equity would not be warranted in pronouncing upon such imperfect materials, that there was a clear resulting trust for Clark. If there was any such trust, it would be in a moiety of the whole purchase then contemplated. Besides; there is another most important consideration in the case,

and that is, that the money was not paid as a part of a present fixed bargain between the parties for the land. It was a mere deposit, to be forfeited if the purchase was not finally made, and satisfactory security given for the whole purchase-money ($113,000,) on or before the ensuing Friday morning. Now it is manifest that Clark never did give any such security; nor did he ever complete, or offer to complete, the bargain with Black; but it was completed exclusively by and in the names of Burnham and Webster, who gave their own satisfactory security therefor. Indeed, the whole evidence shows, that at this time Clark was utterly insolvent and had failed; and it is certainly extremely improbable, that Burnham would, under such circumstances, become liable in effect as surety for Clark for half the purchase-money; or that Clark would, as an insolvent debtor, attempt to purchase half the land. And yet this is his statement as to the original contract between Burnham and himself. The other fact is not less significant. Clark actually received back his $200, and his note for $300. Why was this done, if he was then understood to be an absolute co-purchaser of any part, much more of a moiety of the land, the purchase being admitted to have been an advantageous bargain? The receipt of the money and the note by Clark certainly furnish strong evidence, under the circumstances, that he either considered the bargain as to himself a conditional one with Burnham, or that he voluntarily waived it upon the ground of his utter inability to furnish satisfactory security for his own part of the purchase-money, or of his consciousness, that he had no claim upon the land, unless Webster would consent to let him in to a participation in the purchase, which Webster refused. The taking back, then, of his money and note by Clark has, or at least may justly have, a twofold operation. 1. As evidence pro tanto in support of the allegations in the answer. 2. As evidence of a deliberate waiver of any claim to the enforcement of any right or trust in the land. The bill does not allege any fraud, or mistake, or surprise, in thus taking back the money and note. If the plaintiff meant to rely upon such a ground, it was indispensable, that he should have stated it in his bill. So far from doing so, he silently passes over the whole transaction, as if it never had existed. Now, it seems difficult to suppose a case, where a court of equity would interfere to help a party who had deliberately waived his right under a contract voluntarily, and without any fraud, or mistake, or surprise. A waiver with full knowledge of all the facts, is, we all know, in many cases a complete defence at law, or a good bar to a defence at law, according to circumstances, where it is voluntarily made. Nay, the doctrine has gone farther, and it has been held, that, if made under a mistake

of law with full knowledge of the facts, it binds the party. And equity in this respect generally follows the law. And here, again, I may repeat, that in such a transaction, so obscure and imperfect in its character and proof, a court of equity ought not to act, for the very reason, that the onus probandi is on the plaintiff, and the answer of the defendant admits no part of the case. But in reality, the bill proceeds, not upon the original agreement with Black, (for he is no party to the bill, nor is any relief asked or even pretended to exist with him); but upon an original parol agreement between Burnham and Clark, which was displaced by another substituted parol agreement between them, in which Clark's interest is reduced from a moiety to an eighth in the land. Now, it seems to me clear, that such an agreement, being for an interest in lands, is within the statute of frauds, and should be in writing; for the statute applies not only to legal interests, but to equitable interests and trusts in lands, except resulting trusts. That the present is not a resulting trust has been already stated.

Upon the whole, my judgment is, and the district judge concurs in it, that the bill must be dismissed with costs.